IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KATHERINE A. CHISM, Individually,
As Next-of-Kin and the Surviving Spouse
of MICHAEL LEWIS CHISM, Deceased,
and On Behalf of the Wrongful Death
Beneficiaries of MICHAEL LEWIS
CHISM, Deceased,

     Plaintiff,

v.                                                                No. 15-1033

CHEMRING          NORTH        AMERICA
GROUP,    INC.,    d/b/a   CHEMRING
COUNTERMEASURES         (USA)     and
CHEMRING       COUNTERMEASURES,
LTD. f/k/a ALLOY SURFACES AND
KILGORE FLARES, in its Assumed or
Common Name, as a Business Group and
Operating Company of CHEMRING
GROUP, PLC, a British Company, and as
the   Parent   Company   of   KILGORE
FLARES, CO., LLC,

     Defendant.

---

## ORDER DENYING MOTION TO DISMISS BY DEFENDANT, CHEMRING NORTH AMERICA GROUP, INC.

---

On February 2, 2015, Plaintiff, Katherine A. Chism, individually, as next-of-kin and

surviving spouse of Michael Lewis Chism, deceased, brought this diversity action for wrongful

death against Defendants, Chemring North America, d/b/a/ Chemring Countermeasures (USA)

and Chemring Countermeasures, LTD, f/k/a Allow Surfaces and Kilgore Flares, in its assumed

or common name, as a business group and operating company of Chemring Group, PLC, a

British company, and as the parent company of Kilgore Flares, Co., LLC ("Kilgore"). (Docket

1

Entry ("D.E.") 6.) In the complaint, Chism contends that Defendant's conduct rose to the level of negligence, gross negligence, and willful, egregious, reckless, wanton and/or intentional conduct. Moreover, Plaintiff alleges that Chemring North America Group ("Chemring"): 1) voluntarily and independently assumed the duty to ensure the "health, safety, and welfare of, and prevent injuries to" the employees of its wholly owned subsidiary and 2) breached that duty when the deceased was injured. (D.E. 6 ¶ 47.) Chism points to twenty-five acts that were either direct and proximate causes or contributing factors to his injuries.

Plaintiff seeks recovery of compensatory and punitive damages for "excruciating thermal burns, significant pain and suffering, mental and emotion anguish, lost wages, and premature, wrongful death." (D.E. 6 ¶ 55.) In addition, on behalf of herself and the other wrongful death beneficiaries, she claims damages for, among other things, loss of care, maintenance, love, and companionship pursuant to the Tennessee Wrongful Death statute, Tennessee Code Annotated sections 20-5-106, -107, and -113.

On June 3, 2015, Plaintiff filed her first amended complaint, to which Defendant responded with a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of claims with prejudice. (D.E. 6, 14.) As bases for its motion, Chemring relies on the following grounds: 1) the Tennessee Worker's Compensation Act ("TWCA") provides Chism's sole and exclusive remedies against Chemring, and, thus, precludes any negligence claims; 2) Chemring, as a member-owner of a limited liability corporation ("LLC"), cannot be held liable for claims against the LLC, Kilgore; 3) Chemring did not assume a duty towards Decedent, and, thus, cannot be held responsible; and 4) Plaintiff's pleadings are insufficient to establish a basis for punitive damages under Tennessee law.

*I. LEGAL STANDARD*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering such a motion, a district court should "construe the allegations and facts in the complaint in the light most favorable" to the non-moving party and accept all "well-pl[eaded] factual allegations as true." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). A claim is well-pleaded when "it contains either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Phil. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry*, 604 F.3d at 275-76). The complaint, therefore, must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)),[1] but the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations." *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275-76). Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] Chemring argues that this Court should only consider the facts alleged in the First Amended Complaint (D.E. 6) for this Motion to Dismiss. As it is true that "[a]n amended complaint, once filed, normally supersedes the antecedent complaint," *Bituminous Cas. Corp. v. Tindle Enters., Inc.*, No. 07-1158 B, 2009 WL 2843375, at *4 (W.D. Tenn. Aug. 31, 2009) (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)), the Court agrees with the Defendant's position and will refer only to the facts set forth in the amended complaint.

Under the doctrine of *Erie R.R. Company v. Tompkins*, 304 U.S. 64 (1938), federal courts, when adjudicating claims based on diversity jurisdiction, apply federal procedural law, but employ the state substantive law of the state in which the acts occurred that gave rise to the claims. *See also Williams v. United States*, 754 F. Supp. 2d 942, 948 (W.D. Tenn. 2010). As the accident in this case occurred in Tennessee, that state's law controls the substantive claims, while federal law governs the procedural issues.

## II. FACTS ALLEGED

Plaintiff made the following allegations in her amended complaint. Michael Chism worked for Kilgore Flares Co., a wholly owned subsidiary of Chemring in Toone, Tennessee. (D.E. 6 at ¶¶ 12, 13.) Around 10:50 a.m., on February 22, 2014, an industrial fire ignited, leading to an explosion in the manufacturing plant. (*Id.* at ¶ 15.) Chism caught fire and suffered critical thermal burns. (*Id.* at ¶16.) He was taken to the Regional Medical Center in Memphis where he passed away two days later. (*Id.* at ¶¶ 24, 25.) Three days after the accident, the Tennessee Department of Labor and Workforce Development, Division of Occupational Safety and Health ("TOSHA") undertook an investigation of the facility. (*Id.* at ¶ 28.) As a result, TOSHA cited Kilgore for several "serious" safety violations and found that the "severity of injuries, the probability for composition ignition, and the severity of the fire/explosion event were increased by inadequate and poorly implemented procedures."[2] (*Id.* at ¶ 30, 34-38.) In general, TOSHA cited Kilgore for failures to "implement procedures," to "develop reliable data for hazard analysis," and to "conduct adequate hazard analysis and control hazards." (*Id.* at ¶ 32.)

---

[2] According to the citations, these were violations of the Occupational Safety and Health Standards of the Occupational Safety and Health Administration ("OSHA"). 29 C.F.R §§ 1910.106, 1910.119, 1010.132.

Over five years before, on August 20, 2008, Chemring's Managing Director had issued a lengthy statement, published on the company's public website that, among other things, ensured that the company believed that "all accidents are avoidable" and "accept[ed] full responsibility for ensuring the health, safety and welfare of all its employees and those persons affected by its activities." (D.E. 6-2); Chemring Countermeasures, Health and Safety Policy, http://www.chemringcm.com/about-us/health-and-safety-policy.aspx (last visited Aug. 27, 2015) [perma: http://perma.cc/KRC7-TLV7] [hereinafter "the Health and Safety Policy"]. The statement went on to say, "[t]he company will ensure that all processes and systems of work are designed and managed to take account of Health and Safety." *Id.*

*III. ANALYSIS*

In its motion, Chemring presents four theories for dismissal of this action either in whole or in part. Each one will be addressed in turn.

*A. Parent Company Liability*

Chemring, a Delaware corporation, first asserts that it cannot be held liable for Kilgore's acts under Tennessee and Delaware laws on corporations. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting Willian O. Douglas & Carrol M. Shanks, *Insulation from Liability through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). Thus, "the exercise of the control which stock ownership gives to the stockholders will not [automatically] create liability beyond the assets of the subsidiary." *Id.* at 61-62. "These principles are equally applicable when the shareholder is, in fact, another corporation, and hence, *mere ownership* of a subsidiary does not justify the imposition of liability on the

5

parent [company]." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (emphasis added) (citing *Bestfoods*, 524 U.S. at 69). Thus, a parent company will ordinarily not be liable for the "debts and obligations of the [subsidiary] itself" solely by reason of being a member, even if it is the only member. *See Wierbicki v. Advatech, LLC*, No. 1:06-CV-269, 2007 WL 2725944, at *4 (E.D. Tenn. Sept. 17, 2007); *see also* Del. Code Ann. tit. 6, § 18-303 (2015).

This general statement of law, that parent companies will not be held liable for the obligations of their subsidiaries, is tempered by some exceptions: (1) a parent company may be held liable for the acts of its subsidiary under certain circumstances through the mechanism of piercing the corporate veil; and (2) a parent company can always be held liable for its *own* actions—even if those actions relate to the subsidiary. *See, e.g.*, *Bestfoods*, 524 U.S. at 51; *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 663 (6th Cir. 1979); *Hinkle v. Delavan Indus., Inc.*, 24 F. Supp. 2d 819, 821 (W.D. Tenn. 1998); *Gaines v. Excel Indus., Inc.*, 667 F. Supp. 569 (M.D. Tenn. 1987). For example, in *Bestfoods*, the United States Supreme Court held that parent companies could be held directly liable for their own actions related to a subsidiary's violation of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). *Bestfoods*, 524 U.S. at 64 ("[N]othing in [CERCLA's] terms bars a parent corporation from direct liability for its own actions in operating a facility owned by its subsidiary.").

As to the first exception, Defendant contends that piercing the corporate veil would automatically provide the parent company protection as an employer under the TWCA. However, Chism has not requested that this Court pierce the corporate veil in order to hold Chemring liable for Kilgore's torts. Instead, she relies on the separate nature of the corporate entities for her argument. (D.E. 15-1 at ¶ 6-8.) Moreover, the Court notes that the analyses for

veil piercing and for protection under the exclusive remedy provision of the TWCA are distinct. One does not necessarily implicate the other. *Compare Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008) (quoting *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866 (Tenn. Ct. App.2000)) (stating that a corporate veil may be pierced for either of two reasons: when the two companies are identical or when justice requires it), *with Stigall v. Wickes Mach., a Div. of Wickes Corp.*, 801 S.W.2d 507, 507 (Tenn. 1990) (inquiring only whether the two companies are "one" such that the parent company could gain protection under the Workers' Compensation exclusive remedy provision).

Next, the Court turns to the issue of parent company liability. Kilgore is a Delaware-based LLC that has only one member: Chemring. Tennessee Code Annotated section 48-246-101 provides, "the laws of the jurisdiction under which a foreign LLC is formed or organized govern its formation or organization and internal affairs and the liability of its members and representatives." Tenn. Code Ann. § 48-246-101 (2015). Thus, Delaware substantive law controls the issue of Defendant's liability for Kilgore's torts. The relevant Delaware law provides, "no member or manager of a limited liability company shall be obligated personally for any . . . debt, obligation or liability of the limited liability company [arising in contract, tort, or otherwise] *solely* by reason of being a member or acting as a manager of the limited liability company." Del. Code Ann. tit. 6, § 18-303(a) (emphasis added). Nevertheless, the fact remains that any entity, including a member of an LLC, may be held liable for either its own independent tortious acts or its role in the alleged tortious conduct of the LLC. *See, e.g.*, *Pepsi-Cola Bottling Co. of Salisbury, Md. v. Handy*, No. 1973-S, 2000 WL 364199, at *3 (Del. Ch. Mar. 15, 2000) (quoting R. Franklin Balotti and Jesse A. Finkelstein, *The Delaware Law of Corporations & Business Organizations* 20-6 (3rd ed.1998)) ("The word 'solely,' which is used

in Section 18-303, indicates that a member or manager will not be liable for the debts, obligations, or liabilities of a Delaware LLC only by reason of being a member or manager; however, other acts or events could result in the imposition of liability upon or assumption of liability by a member or manager."); *see also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 882 (Del. Ch. 2009).

Plaintiff insists that Chemring, through its assurances of safety stated in the Policy, undertook the duty of ensuring the health and safety of its employees and all other people affected by its operations. After assuming this duty, Chism alleges that Defendant ignored the safety conditions of the plant despite the many safety violations. Much like in *Best Foods*, where the United States Supreme Court held a parent corporation liable for its own actions in operating a subsidiary-owned facility, Plaintiff does not ask the Court to hold Defendant liable for Kilgore's torts because it is the subsidiary's parent company. 524 U.S. at 64. Instead, she points to Chemring's alleged independent failure to monitor the safety of the employment environment as a basis for liability. However, as the Court found in *Bestfoods*, holding a parent company directly liable for activities occurring during the operations of its subsidiary is a fact-intensive inquiry that requires a court to look at to the amount of parental participation in the subsidiary's activities, among other things. *Id.*

The Plaintiff has alleged that the company, despite the public statements insuring employee safety, failed to "adequately provide the very processes, sufficiency of information, communication, training and supervision explicitly ensured by Chemring . . . ." (D.E. 6 ¶ 42). The facts alleged, taken as true, state a plausible basis for relief under the direct liability theory, and the LLC formation would not automatically insulate Defendant from liability. *See Smartt v. NHC Healthcare/McMinnville, LLC*, No. M200702026COAR3CV, 2009 WL 482475, at *5

(Tenn. Ct. App. Feb. 24, 2009) ("[D]irect liability can be imputed to a parent entity as a result of the parent's control over a subsidiary"). Accordingly, the Court holds that Plaintiff has pleaded enough facts to survive dismissal under Rule 12(b)(6). Dismissal of the claims on this ground is DENIED.

B.      *The TWCA's Exclusive Remedy Provision*

Chemring next asserts that Chism cannot hold the company liable because the TWCA is the exclusive remedy available to employees who sue their employers for injuries incurred within the course and scope of the employment. *See* Tenn. Code Ann. § 50-6-108(a) ("The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, . . . shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death."); *see generally* Tenn. Code Ann. § 50-6-101 to -921.

Since the TWCA was passed in 1919, it has "provided compensation for injured employees, eliminated employers' potential defenses, set attorney's fees, provided for a system of adjudication, abrogated the right of employees to pursue common law negligence actions, and capped employees' potential recovery." *Yardley v. Hosp. Housekeeping Sys.*, 2015 WL 5545620 (Tenn. 2015) (citing Act of Feb. 5, 1919, ch. 123 § 2, 1919 Tenn. Pub. Acts 369). Thus, the TWCA serves as a "comprehensive [legal] system that reflects a compromise between the interests of employers and employees," *id.* (quoting *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984)), and is a *quid pro quo* system. It offers workers a streamlined, no-fault system for obtaining compensation for work-related injuries in return for employer tort immunity.

This system, however, operates exclusively within the employer/employee relationship. *See Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985) ("The basis of liability under the [TWCA] is the employer-employee relationship."); *Hammett v. Vogue, Inc.*, 165 S.W.2d 577 (1942). For this reason, parent companies do not normally fall within the scope of the TWCA; they are not "employers" under the TWCA's definitions. *See* Tenn. Code Ann. § 50-6-102 (12) ("'Employer' includes any individual, firm, association or corporation, [or the legal representative or receiver thereof,] using the services of not less than five (5) persons for pay . . . .") Moreover, courts generally decline to "extend the scope of exclusivity [of remedy] beyond the *quid pro quo* expressly created by the legislature and accepted by the legislature and accepted by the parties." *Gaines*, 667 F. Supp. at 575. As a non-employer of the deceased, the TWCA would not normally protect Defendant from liability.

Nevertheless, courts in Tennessee have found that, in some instances, certain parent companies are alter egos of their subsidiaries, and, thus, protected from liability by the exclusivity provision of the TWCA. The burden rests on the Defendant to prove that it is immune under the TWCA once a prima facie negligence case is established. *See Gaines*, 667 F. Supp. at 576; *see also Watson v. Borg-Warner Corp.*, 228 S.W.2d 1011, 1014 (1950); *Pikeville Fuel Co. v. Marsh*, 232 S.W.2d 789, 793 (Tenn. Ct. App. 1948) *disapproved of on other grounds by Archie v. Yates*, 325 S.W.2d 519 (Tenn. 1959).

In *Stigall*, the Tennessee Supreme Court applied the exclusive remedy provision of the TWCA to a parent company after finding that the wholly owned subsidiary and parent company were essentially the same entity. *Stigall*, 801 S.W.2d at 510. To arrive at this holding, the court considered the following documents: plaintiff's employment application, payroll records, payroll checks, W-2 forms, the injury report filed with the State Workers' Compensation Department,

insurance policies, disability payments, and a pre-employment physical examination. *Id.* In *Gaines*, the United States District Court for the Middle District of Tennessee similarly looked at whether a parent company was entitled to invoke statutory employer immunity under the TWCA against negligence claims brought by a subsidiary's employee. 667 F. Supp. at 575. The court held that such questions are ones of fact to be decided by the factfinder. *Id.* at 577.

In the instant case, Plaintiff does not claim that Kilgore is simply an alter ego of Chemring, and Defendant concedes, "Kilgore, not Chemring, was in fact Decedent's 'statutory employer.'" (D.E. 14-1 at 19.) Moreover, as Defendant notes, there has been no allegation that Chemring historically intervened in or controlled any of Kilgore's operations. As well, Defendant has not established that it is entitled to immunity under the TWCA. Given the absence of such information, further fact development is needed to ascertain whether, at the time of the accident, the two companies were integrated enough to afford Defendant TWCA protection. Accordingly, dismissal of the claims on this ground is DENIED.

C.      *Undertaking of a Duty for Negligence Liability*

Next, Chemring seeks dismissal on the ground that the company never assumed a duty to the deceased, and, thus, cannot be held liable for negligently failing to: 1) protect Chism from harm by providing safety "processes, sufficiency of information, communication, training and supervision"; and 2) ensure the safety and welfare of Kilgore's employees.

In Tennessee, "persons do not ordinarily have a duty to act to protect others from dangers or risks except for those that they themselves have created." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 357 (Tenn. 2008). Thus, passive actions, i.e. the failure to act, are normally not grounds for tort liability. *Id.* at 356-57. The Second Restatement of Torts provides,

One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Restatement (Second) of Torts § 324(A) (1965). This is commonly referred to as the Good Samaritan theory of liability. This theory can be extended to the corporate context by inquiring whether a company has assumed a certain duty to its employees or the community, but negligently failed to undertake that responsibility. *See Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982); *see also Sagan v. United States*, 342 F.3d 493, 498 (6th Cir. 2003); *Myers v. United States*, 17 F.3d 890, 903 (6th Cir. 1994). This negligence can manifest itself in one act or an entire course of conduct that creates risks of harm. *See Satterfield*, 266 S.W.at 356. For example, a parent company may incur liability for injuries to its subsidiary's employees "if it has undertaken the duty to prevent injuries to [those] employees." *Hinkle v. Delavan Induss.*, 24 F. Supp. 2d 819 (W.D. Tenn. 1998); *see also Gaines*, 667 F. Supp. 569 (holding that workers, employees of subsidiary, could sustain an action against the parent company under the Good Samaritan doctrine of liability). In determining whether a parent company has taken on this duty, the relevant question is whether evidence exists to prove that the "parent corporation assumed a duty to ensure safety." *Id.*

Chism, in her amended complaint, maintained that Defendant's Health and Safety Policy constituted the undertaking of a duty to prevent risk of harm. (D.E. 6-2 at 2.) Taken as true, this could establish the assumption of a duty to ensure safety. Accordingly, the Court holds Plaintiff has presented sufficient facts to establish that Defendant undertook a duty of care to Kilgore employees. Thus, dismissal of the claims on this ground is DENIED.

*D.      Punitive Damages*

Chemring last argues that Plaintiff that because all counts should be dismissed, neither compensatory nor punitive damages are appropriate.  In the alternative, Defendant contends that Plaintiff has failed to plead facts to establish that it acted in an intentional, fraudulent, malicious, or reckless manner.

The Court denied the motion to dismiss the claims that would give rise to compensatory damages, thus the first argument fails.  As to the second point, in 1992, the Tennessee Supreme Court stated that punitive damages were available in cases "involving only the most egregious of wrongs."  *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).  There are several forms of such wrongs.  "Although punitive damages may be available upon a showing of evil motive or intent or callous indifference, punitive damages are also appropriate when a defendant's action involves even reckless disregard of the plaintiff's rights."  *Tillman v. Decatur Cnty.*, 15-01068 JDB-EGB, 2015 WL 5675843, at \*6 (W.D. Tenn. Sept. 25, 2015) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances."  *Id.* (citing Tenn. Code Ann. § 39-11-302(c) (1991) (criminal definition of "reckless")).

Chism has submitted as exhibits to the amended complaint TOSHA safety reports showing that Kilgore committed numerous serious safety violations.  These violations were all systemic safety deficiencies, including the failure to use adequate equipment and safety procedures, deficiency in the written safety protocols for daily operations, inadequacy of the process hazard analysis, and failure to provide adequate safety gear to workers.  The amended

complaint shows that 1) Chemring is, at least partially, in the business of fabricating flares, and 2) through the Health and Safety Policy, the company demonstrated awareness of the potentially dangerous nature of its activities. Construing the complaint in the light most favorable to Plaintiff, the safety failures—which constituted regulatory violations—combined with the alleged awareness of the company as to safety concerns and the resulting harm that might occur, could be deemed by a fact finder as constituting a gross deviation from the standard of care that an ordinary company would exercise under all the circumstances. *Cf. Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1216 (6th Cir. 1988) (finding that the district court was within its discretion in considering violation of state safety regulations when awarding punitive damages). Accordingly, Plaintiff has satisfied the pleading requirement to state a claim for punitive damages, and Defendant's motion to dismiss on that ground is DENIED.

## *IV. CONCLUSION*

For the reasons discussed herein, the four grounds for Chemring's motion to dismiss are DENIED.

IT IS SO ORDERED this 7th day of December 2015.


s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE